# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLAN MANGUM, by and through his guardian ad litem, STACEY THOMPSON,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,[1]<br><br>Defendant. | Case No. 05-cv-1515 TAG<br><br>MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION<br><br>ORDER DIRECTING THE CLERK TO TO ENTER JUDGMENT IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF |

## INTRODUCTION

Stacey Thompson ("Ms. Thompson"), as guardian ad litem of her minor son Kylan Mangum ("Claimant" or "Plaintiff") (Doc. 23), seeks judicial review of the administrative decision by the Commissioner of Social Security ("Commissioner") denying her son's claim for Child's Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383d ("the Act"). Claimant filed a complaint on November 21, 2005 (Doc. 1) and an opening brief on June 26, 2006. (Doc. 16). The Commissioner filed his opposition to the appeal on July 24, 2006. (Doc. 17). Claimant filed a reply brief on August 9, 2006. (Doc. 18).

Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties consented to proceed before a United States Magistrate Judge. (Docs. 9, 13). By an order dated December 21, 2006, this action was assigned to the Magistrate Judge for all further proceedings. (Doc. 21).

---

[1] Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart, as Commissioner of the Social Security Administration. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).

**JURISDICTION**

On November 7, 2002, Ms. Thompson, on behalf of Claimant, protectively filed[2] a "leads/worksheet" for SSI under Title XVI of the Act. (Administrative Record ("AR") 58). She filed an SSI application on Claimant's behalf on January 6, 2003. (AR 59-62). The application was denied initially and on reconsideration. (AR 39-43, 44-46). At an October 4, 2004, hearing before Administrative Law Judge ("ALJ") JoAnne S. Birge, Claimant, represented by counsel, appeared, and Ms. Thompson testified. (AR 201-58). On March 23, 2005, the ALJ issued a decision finding that Claimant was not disabled. (AR 18-26). The Appeals Council denied a request for review on September 22, 2005. (AR 10-13). The Appeal Council's decision, therefore, became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). The initiation of an appeal in the district court must be commenced within sixty (60) days of the Appeal Council's decision. 42 U.S.C. § 405(g). On November 21, 2005, Claimant timely filed this action. (Doc. 1).

**STATEMENT OF FACTS**

In a January 6, 2003, SSI application, Ms. Thompson requested benefits for Claimant as a disabled child because he suffered from asthma and bronchitis, for which he used a nebulizer to inhale medication three times daily, took prescription medicine, and occasionally needed a breathing machine. Ms. Thompson stated that her sister gave her $400/monthly, which she used to pay the rent and other household expenses. (AR 61). She reported that Claimant's disability onset date was October 19, 2000, although the Social Security Administration ("SSA") determined that Claimant's onset date was November 29, 2000.[3] (AR 58, 63).

///

///

---

[2] To qualify as an effective SSI claim, an application for benefits must be submitted on a prescribed form. 20 C.F.R. § 416.305. However, a written statement indicating a person's intent to claim benefits can, if certain coincident and subsequent requirements are met, establish a protective filing date. 20 C.F.R. § 416.340.

[3] Although the "leads/protective filing worksheet" listed an alleged onset date of November 29, 2002, it also identified the lead date as November 7, 2002, which is the alternative date that Ms. Thompson indicated as the onset date on the SSI application. (AR 63).

1        The facts relevant to this opinion have been presented in the administrative hearing transcript,
2   the ALJ's decision, and the Claimant's and the Commissioner's brief, and will only be summarized
3   here.  To the extent necessary, additional facts will be addressed in this Court's analysis.
4        At the October 4, 2004, hearing, Ms. Thompson, at the request of the ALJ, clarified that
5   Drs. Fox, Lewis, and Jackson share a practice, that they have two separate offices, and that she takes
6   Claimant to the office out of which Dr. Jackson worked only when she cannot get an appointment at
7   the other office.  (AR 203, 206, 211-212).  Ms. Thompson testified that Claimant was born on
8   October 19, 2000, making him almost four years old at the time of the hearing.  (AR 214).  She
9   added that Claimant started attending a Head-Start preschool program approximately one month
10  earlier – on or about August 31, 2004.  (AR 214-215).  According to Ms. Thompson, she and
11  Claimant's teacher were concerned about his speech, because he tended to leave off the beginning
12  consonants or syllables of words.  (AR 215-216).  Ms. Thompson testified that Claimant never had a
13  hearing test, although he has had "fluid behind his ear since he was a baby," and she agreed that the
14  problem could be with his hearing rather than his speech.  (AR 217).
15       With respect to Claimant's asthma, Ms. Thompson testified he starts wheezing, becomes very
16  congested, and develops green mucous.  When Claimant has an asthma attack, she takes him to the
17  doctor's office, where they either treat him or tell her to take him home and treat him.  (AR 217).
18  She stated that she usually just treats him at home now unless he is extremely congested.  (AR 207).
19  Ms. Thompson added that she has taken Claimant to the emergency room in the past for his asthma
20  attacks, but has not had to take Claimant to the emergency room since he started school.  (AR 223).
21  Claimant's two-year-old sister, father, and cousin also have asthma.  (AR 219).  She stated that she
22  has to use "pump him with the treatment" when he starts wheezing or coughing, but, if his condition
23  is serious, she has to place him on the breathing machine.  (AR 218).  Ms. Thompson testified that
24  she had to use the breathing machine to treat Claimant at least three or four times per month, three
25  treatments daily.  (AR 220-221).  Ms. Thompson added that, on school days, she gave him his
26  steroid medication and pumped him Albuteral using his nebulizer in the morning, when she picked
27  him up from school at 5:00 p.m., and before putting him to bed.  (AR 221).  Ms. Thompson further
28  testified that the school agreed to help Claimant with the nebulizer, because he often needs it every

1   four-to-six hours. (AR 222). She added that the school has never called her requesting that she
2   come and take Claimant home. (AR 222).

3   Ms. Thompson explained that Claimant had not been around children his age until he started
4   school and initially he had problems getting along with his schoolmates. She stated that he was not
5   accustomed to sharing, and there were complaints about him during the first two weeks of school.
6   (AR 223-224). Ms. Thompson testified that Claimant is hyper and constantly moves around, which
7   the doctors said could be a side effect of his steroid medication. (AR 224).

8   With respect to Claimant's learning skills, Ms. Thompson testified that she has a lot of
9   learning books that she goes through with him. (AR 225). She stated that Claimant knows the
10  animals and some colors, but he lacks patience and becomes easily frustrated, especially when she
11  tries to teach him to use pens and pencils or to read him a book, which interferes with his ability to
12  learn. (AR 225-227).

13  When asked about Claimant's activities, Ms. Thompson testified that he liked to play outside,
14  but his asthma prevented him form playing outside or riding his tricycle for more than fifteen or
15  twenty minutes because he gets tired and starts wheezing, coughing, and vomiting. (AR 218, 226).
16  She further testified that, in the summer, he sometimes goes in the water, in which case he might
17  immediately catch a cold, and often he just watches others play. (AR 227). Ms. Thompson reported
18  that when Claimant is inside the house, his favorite activity is watching movies and television shows,
19  but he also engages in educational activities with her or his older brother, such as playing with
20  shapes, learning letters, reading books. (AR 219, 226).

21  Ms. Thompson's attorney questioned her about the appointment that the SSA scheduled for
22  Claimant with Dr. Lee. Ms. Thompson reported that Claimant was upset and would not let the
23  doctor touch him, nor would Dr. Lee provide her sufficient time to calm her son down. She testified
24  that Dr. Lee was rude and rough, and he did not check Claimant at all during the five-minute
25  examination. Ms. Thompson stated that the experience upset Claimant so much that she had to give
26  him a treatment when they arrived home. (AR 228-230).
27  ///
28  ///

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision to deny benefits, made through an ALJ, when the decision is based on the proper legal standards and is supported by substantial evidence. Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005). Substantial evidence is more than a mere scintilla but less than a preponderance. McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989) (quotations omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Webb, 433 F.3d at 686, citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971). Moreover, such "inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" are accorded the same consideration as is substantial evidence as defined above. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (quotation and citation omitted).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400, 91 S.Ct. at 1426-1427. If the evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Moreover, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that would support a finding of either disability or non-disability, the Commissioner's decision is conclusive. Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. **Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987).**

## RELEVANT LEGAL FRAMEWORK

On August 22, 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. 104-193, 110 Stat. 105 which amended 42 U.S.C. § 1382c(a)(3). Under this law, a child under the age of eighteen is considered disabled for the purposes of SSI benefits if "that individual has a medically determinable physical or mental impairment, which

results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

### SEQUENTIAL EVALUATION PROCESS

The Social Security regulations promulgated by the Commissioner provide a three-step process to determine whether a child is disabled. 20 C.F.R. § 416.924. First, the ALJ must determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(a). If the child is engaged in a substantial gainful activity, the child is found to be not disabled. 20 C.F.R. § 416.924(b). If the child is not engaged in a substantial gainful activity, the analysis proceeds to step two. Step two requires the ALJ to ascertain whether the child has a medically determinable physical or mental impairment or combination of impairments, and whether such impairment(s) is or are severe. 20 C.F.R. §§ 416.924(a) and (c). If the child does not have a severe medically determinable impairment or combination of impairments, the child is found to be not disabled. 20 C.F.R. § 416.924(a). The child will not be found to have a severe impairment if it constitutes a "slight abnormality or combination of slight abnormalities that causes no more than minimal functional limitations." 20 C.F.R. § 416.924(c); see Smith v. Massanari, 139 F.Supp.2d 1128, 1132 (C.D. California 2001).

If, however, there is a finding of a severe medically determinable impairment, the analysis proceeds to the third and final step, which requires the ALJ to decide whether the impairment or combination of impairments "meet, medically equal or functionally equal the listings. An impairment(s) causes marked and severe functional limitations if it meets or medically equals the severity of a set of criteria for an impairment in the listings, or if it functionally equals the listings." 20 C.F.R. § 416.924(d). The "listings" refers to the Listing of Impairments set forth in 20 C.F.R. § 404, Subpart P, App.1. An impairment will be found to be functionally equivalent to a listed impairment if it results in extreme limitations in one area of functioning or marked limitations in two areas. 20 C.F.R. § 416.926a(a). To determine functional equivalence, the following six domains, or broad areas of functioning, are utilized: acquiring and using information, attending and completing

///

tasks, interacting and relating with others, moving about and manipulating objects, caring for oneself, and health and physical well-being.  20 C.F.R. § 416.926a(b).

In the last step of analysis, if the child's impairment or combination of impairments meet, or medically or functionally equal the requirements of a listed impairment, and meet the duration requirement, the child is found to be disabled. 20 C.F.R. § 416.924(d).  If the child's impairment or combination of impairments do not meet, or medically or functionally equal the requirements of a listed impairment, or fail to meet the duration requirement, the child is found to be not disabled. 20 C.F.R. § 416.924(d).

## THE ALJ'S FINDINGS

The ALJ found at step one that Claimant has never engaged in substantial gainful activity. (AR 21, 26).  At step two, the ALJ determined that Claimant suffers from asthma and a learning disorder, which constitute severe impairments.  (AR 22, 26).  ALJ Birge discounted, as unsupported by any medical evidence, the non-definitive diagnosis of "probable ADHD,"[4] concluding that there was no indication that Claimant's behavior was different than that of a normal, active child. (AR 22).  The ALJ, however, found that Ms. Thompson's testimony was credible to the extent that it was supported by the record.  (AR 26).  The ALJ determined that the evidence of record demonstrated that Claimant's limitations, resulting from the effects of his asthma and learning disability, do not meet, medically equal or functionally equal the criteria of any of the listings impairments.  (AR 26).  With regard to functional equivalence, the ALJ made the following findings based on the records and Ms. Thompson's testimony:  (1) Claimant has less than marked limitations in acquiring and using information due to his learning disability; (2) Claimant has no limitations in attending and completing tasks in an age-appropriate manner, given the lack of any clinical or other evidence to support his non-treating physician's diagnosis of hyperactivity or other indication that Claimant could not follow instructions and complete tasks; (3) Claimant has no limitations in interacting and relating with others; (4) Claimant has no limitations in moving about and

---

[4] ADHD is the acronym for attention deficit/hyperactivity disorder.  ADHD is a mental illness that is characterized by difficulty paying attention and a high degree of restlessness and impulsive behavior.  Hyperactivity is related to ADHD, with symptoms including constant fidgeting or moving, incessant talking, and difficulty engaging in quiet behavior.

7

manipulating objects; (5) Claimant has a less-than-marked limitation in caring for himself insofar as he cannot self-administer his daily Albuterol with a nebulizer; and (6) Claimant has marked limitations with respect to his health and physical well being because his asthma necessitates that he consistently use a nebulizer and the side-effects of his medications may affect his school functioning. (AR 23-26). Thus, because Claimant's impairments did not meet or equal the listings, 20 C.F.R. 404, Subpt. P, App. 1, and the ALJ found that he did not have an extreme limitation in one domain or a marked limitation in two domains, ALJ Birge concluded that Claimant was not under a disability and, therefore, not eligible for SSI benefits. (AR 26).

## ISSUES

In the opening brief, Claimant asserts that the Commissioner erred as a matter of law. Claimant's broad allegations contend that:

A. The ALJ improperly evaluated Claimant's ADHD and found that he did not suffer a marked limitation in the area of attending to and completing tasks due to her inaccurate assessment; and

B. The ALJ erred in concluding that Howard Jackson, M.D., was not Claimant's treating physician and, thus, discounted his opinion.

As discussed above, this Court must uphold the Commissioner's determination that claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

## DISCUSSION

**A.   ALJ improperly evaluated Claimant's ADHD**

Claimant asserts that ALJ Birge erred in determining that he did not have ADHD, which resulted in the ALJ's finding that he suffered a marked limitation in only one, instead of two, of the six domains required for him to be eligible for SSI benefits. (See generally Docs. 16, 18). According to Claimant, the ALJ reached her conclusion based on multiple misapplications of the law and despite substantial evidence to the contrary. (Id.). Specifically, Claimant alleges that (i) records from his treating physician, Dr. Howard Jackson, combined with Ms. Thompson's testimony, were sufficient to support a finding that Claimant had ADHD (Doc. 16, pp. 4-5; Doc. 18, pp. 3-5); (ii) to the extent that the ALJ found that Claimant's hyperactivity could be a result of his medications, she

failed to determine whether the side-effects were, in and of themselves, disabling (Doc. 16, p. 5); and (iii) the ALJ was obligated to fully and fairly develop the record because the ALJ largely based her findings that Claimant was not limited in the domain of attending to and completing tasks on the lack of psychiatric or psychological assessments.  (Doc. 16, pp. 6-7; Doc. 18, p. 5).

**(i) Medical Records and Testimony Sufficed to Support a Finding that Claimant had ADHD**

Claimant argues that the ALJ disregarded his treating physician's records and assessment of his limitations, and Ms. Thompson's testimony, which constituted competent evidence, were sufficient to support a finding that he had ADHD. (Doc. 16, p. 4-5; Doc. 18, pp. 3-5).  Claimant contends that, had the ALJ properly evaluated the medical records and testimony, she would have concluded that Claimant suffered from ADHD and, accordingly, had a marked limitation not only in health and physical well-being, but also in the domain of attending and completing tasks, rendering him eligible for SSI.  (Doc. 16, pp. 4-6, 8; Doc. 18, p. 6).

The regulations provide that all claimants must provide evidence, including but not limited to (1) that obtained from any medical source; (2) statements made to medical sources and during the hearing before the ALJ concerning claimant's daily activities; and (3) all factors showing how the claimant's impairments effect his ability to function.  20 C.F.R. § 416.912.  To be deemed disabled under Title XVI, a child must have a "medically determinable physical or mental impairment." 42 U.S.C. § 1382(c)(3)(C)(i).  Medical evidence used to ascertain disability in children must include symptoms, signs, and laboratory findings.  20 C.F.R. § 924a(a)(1).  Symptoms are defined as statements by a claimant, or an adult close to him, that describe physical or mental impairments. 20 C.F.R. § 416.928(a).  These statements, by themselves, are not sufficient to establish the existence of an impairment.  Id.  Signs are "anatomical, physiological, or psychological abnormalities [that can] be shown by medically acceptable clinical diagnostic techniques."  20 C.F.R. § 416.928(b). Laboratory findings include diagnostic tests such as electrocardiograms and X-rays.  20 C.F.R. § 416.928(c).

///

///

9

With respect to children, the Commissioner considers all relevant evidence in the claimant's record, including information and testimony from non-medical people, such as a claimant's parents, care-givers, or teachers, who are familiar with the effect that the child's impairment(s) have on his daily functioning . 20 C.F.R. § 416.924a(a), (a)(2). Any functional limitations, however, must result from medically determinable impairments and are compared to children of the same age who do not have an impairment. 20 C.F.R. § 416.924a(b). Functional limitations also are differentiated in accordance with the general category in which, based on his age, the child is classified, such as toddler, adolescent, etc. 20 C.F.R. § 416.926a.

The domain of attending and completing tasks in a three-to-six-year-old child is evaluated by determining whether he can pay attention when spoken to directly, sustain attention long enough to finish playful and learning activities, and maintain his focus to, e.g., get dressed by himself. 20 C.F.R. 416.926(a)(h). The regulation does not specify how a learning disability might alter this general method of evaluation. Id.

In the instant case, the ALJ did not err in finding, based on Dr. Jackson's records and Ms. Thompson's testimony, that Claimant did not suffer from ADHD. Although during an October 1, 2004, follow-up appointment for asthma, Dr. Jackson wrote that Claimant had a history of, and diagnosed him as being, hyperactive, and mentioned Claimant's behavioral problems, impulsiveness, and short attention span, there is no indication that Dr. Jackson's diagnosis is supported by anything other than observations and statements made by Ms. Thompson. (AR 167). Given the lack of medical tests that demonstrated a medical impairment, as required under 42 U.S.C. § 1382(c)(3)(C)(i) and 20 C.F.R. §§ 416.924a(a)(1) and (b), the ALJ's evaluation was in accordance with the aforesaid statue and regulations. On October 27, 2004, Dr. Jackson reiterated that Claimant had a history of trouble in school and a short attention span, and diagnosed "prob[able] ADHD." (AR 169). Again, Dr. Jackson provided no medically determinable or clinical tests in support of his diagnosis, and, to the extent that any of the other medical records contained any reference to

Claimant's mental state, there was no indication that his behavior was abnormal.[5] (AR 169; see AR 127 ("active and playful"), AR 194 ("responds normally to stimulation and is easily consolable")).[6]

In addition, Ms. Thompson's testimony is internally inconsistent with respect to Claimant's hyperactivity and attention span. (See AR 218-219, 223-237). She testified that Claimant initially had problems at school because he was unaccustomed to being around children his age, but the complaints had abated after two weeks. (AR 223-224). Ms. Thompson testified that Claimant was hyper, constantly moved around, and lacked patience, but, despite the foregoing, he liked to sit still and watch television, engage in educational activities – including reading learning books – with her or his older brother, and liked to ride his tricycle and play outdoors but could not stay outside for extended periods of time due to his asthma, not because he was hyperactive or lacked the attention span to play outdoors. (AR 218-219, 224-227). Moreover, except for the October 2004 visits to Dr. Jackson, Ms. Thompson never complained that Claimant had any symptoms that would suggest he be tested for hyperactivity, and there were no records other than Dr. Jackson's that Claimant suffered such an ailment. (See generally AR).

The ALJ concluded that, given the dearth of medical records supporting a diagnosis of ADHD or hyperactivity, Claimant was no more active than a normal child. (AR 22). ALJ Birge further concluded that there was no medical evidence or credible, anecdotal testimony that would support a finding that Claimant had a marked limitation in the domain of attending to or completing tasks expected of a child his age. (AR 24); 20 C.F.R. § 416.924a(b). Moreover, unless the ALJ fails to apply the proper legal standards, her credibility findings are accorded deference, especially when supported by substantial evidence and the inferences drawn therefrom. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1426-1427 (1971); Sprague v. Bowen, 812 F.2d 1226, 1229-1230

---

[5] Claimant's argument, which will be discussed more in (iii), that the ALJ erroneously discounted Dr. Jackson's diagnosis and opinion regarding Claimant's ADHD and functional limitations on the fact that they were not supported by psychological or psychiatric assessments is misplaced because, although the ALJ mentioned the lack of medical testing, including mental health evaluations, the regulations require that a diagnosis must be based on medical tests that support the diagnosed medical impairment. (Doc. 16, p. 6; AR 24, 164, 167, 169); 20 C.F.R. §§ 416.924a(a)(1) and (b).

[6] Claimant had an appointment with Dr. Jackson on February 28, 2005, to follow-up on his asthma after he was treated in the emergency room on February 21, 2005. (AR 189, 194-95). Dr. Jackson diagnosed Claimant as having asthma and ADHD, but, again, provided no medical basis for the ADHD diagnosis. (AR 189).

(9th Cir. 1987); Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965).  Because, in the instant case, the ALJ adhered to the regulations, and, as discussed above, there is almost no evidence based upon which a diagnosis of, or functional limitation due to, AHDH could be drawn, the undersigned finds that the ALJ did not err in reaching this decision.

**(ii) Disabling Effects of Claimant's Medications**

Claimant alleges that the ALJ erred in relying on Ms. Thompson's speculation that Claimant's medications caused him to be hyperactive, contending, inter alia, that the ALJ was obligated to determine whether the effects of his medications, by themselves, could be disabling.  (Doc. 16, p. 5). The ALJ, however, implied that Ms. Thompson's testimony regarding the side-effects of Claimant's medications did not overcome the lack of clinical evidence to support Dr. Jackson's diagnosis of hyperactivity or ADHD, as discussed in detail above.  (AR 24).  ALJ Birge further stated that the medication was one of several reasons for finding that his purported hyperactivity did not limit Claimant's ability to attend to or complete tasks, adding that there was no indication that he could not follow instructions.  (Id.).

Claimant cites Varney v. Secretary of Health and Human Services, 846 F.2d 581, 586-587 (9th Cir. 1988) and Correa ex rel. Correa v. Commissioner of Social Security, 381 F.Supp.2d 386, 396-397 (D.N.J. 2004) to support his contention that the ALJ should have ascertained whether the side-effects from Claimant's medications were disabling in themselves.  (See Doc. 16, p. 5).  Both of these cases, however, are distinguishable from the case sub judice.  In Varney, the 9th Circuit determined that an ALJ must make specific findings for rejecting Claimant's subjective testimony about the side-effects of his medication and how they affected his ability to work.  846 F.2d at 585-586.  In Correa, the district court remanded the case after finding that the ALJ had erroneously ignored testimony about the type of medication and failed to consider whether its side-effects met a listing. 381 F.Supp.2d at 397.  In the instant case, the ALJ did not reject Ms. Thompson's testimony, but used it, in part, to contradict Dr. Jackson's assessment that Claimant had a marked limitation in the domain of attending to or completing tasks.  (AR 24).  Moreover, although the ALJ did not specify the specific medications that may have caused Claimant's hyperactivity, it is noteworthy that Claimant had been taking the same or similar medications well before Ms. Thompson testified at the

hearing and before any diagnosis of hyperactivity or ADHD had been made. (See AR 24, 114, 125, 130, 138-139, 187, 224 (including medical records reporting Claimant's use of various medications for his asthma, including albuterol and steroids, as early as 2002)). Accordingly, because the ALJ did not rely on Ms. Thompson's testimony that Claimant's long-term medicine suddenly made him hyperactive, and she concluded that he did not suffer from ADHD for reasons set forth in the regulations (see infra), the undersigned finds that the ALJ did not err in referencing Ms. Thompson's speculative testimony or in failing to ascertain whether Claimant's medications did, in fact, limit his ability to function in one of the domains.

**(iii) Failure to Develop the Record**

Claimant's next assertion is that, because the ALJ's decision is based in large part on the lack of clinical, psychological, or psychiatric evaluations that support Dr. Jackson's diagnosis of hyperactivity and ADHD, and, since Claimant had only recently started attending pre-school, there were no records from that facility regarding his ability to attend to or complete tasks, the ALJ was obligated to order tests or consultations required to fully and fairly develop the record. (Doc. 16, p. 6-7; Doc. 18, p.5).

In a Social Security case, an ALJ is obligated to fully and fairly develop the record even if the claimant is represented by counsel. Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003). This duty may require that the ALJ obtain additional information by, inter alia, contacting treating physicians, scheduling consultative examinations, or calling a medical expert. 20 C.F.R. §§ 416.912(e)-(f), 416.919a; Armstrong v. Commissioner, 160 F.3d 587, 590 (9th Cir. 1998). When the claimant is a child, the claimant bears the burden of proving that he is disabled by furnishing "medical and other evidence about the effects" of his alleged disabling impairments on his ability to function on a sustained basis. 20 C.F.R § 416.912(a). In addition, the child claimant must provide evidence of a "medically determinable physical or mental impairment," 42 U.S.C. § 1382(c)(3)(C)(i), which can be demonstrated by "medically acceptable clinical diagnostic techniques." 20 C.F.R. § 416.928(b). Under certain circumstances, an extended period of observation of a toddler may be used to supplement medically acceptable diagnostic tests, but the observations of children other than newborns or infants are insufficient, without more, to establish that the child has a medically

determinable impairment that affects his ability to function.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00.

The ALJ is not obligated to develop an existing record that is unambiguous, complete, and adequate such that he properly can evaluate the evidence.  See Mayes v. Massanari, 276 F.3d 453, 459-460 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").

In the instant case, Claimant failed to provide the requisite evidence of a medically determinable impairment and, thus, did not meet his initial burden.  Further, the record contained adequate and unambiguous evidence upon which the ALJ could determine whether Claimant was disabled or had a functional limitation, especially given the lack of records other than those containing short-term observations and lay testimony that mentioned Claimant's hyperactivity or inability to attend to or complete a task.  (See AR 101-183, 224).  Because Claimant failed to meet his initial burden, and the record contained adequate and unambiguous evidence that he suffered only asthma, bronchitis, and occasional earaches, the ALJ was not obligated to order tests to support Dr. Jackson's conclusory diagnoses and lay testimony regarding Claimant's purported ADHD and related limitations.  Mayes, 276 F.3d at 459-460.

Based on the foregoing, the undersigned finds that the ALJ was not obligated to further develop the record and, therefore, this argument has no merit.

**B.   ALJ's Finding that Dr. Howard Jackson was not Claimant's treating physician**

Claimant argues that the ALJ mistakenly concluded that, (I) because Dr. Jackson had not treated Claimant from November 14, 2003 until October 1, 2004, he did not qualify as Claimant's treating physician. (Doc. 16, pp. 6-7).  Claimant asserts that this finding enabled the ALJ (ii) to discount Dr. Jackson's opinions without setting forth specific and legitimate reasons for doing so, and to rely, instead, on the opinions of examining and non-examining consulting physicians.  (Doc. 16, pp. 7-8).

///

///

**(i) ALJ's finding that Dr. Jackson was not Claimant's treating physician**

Claimant initially argues that the ALJ erred in finding that Dr. Jackson was not Claimant's treating physician because he had not seen Claimant for almost one year. (Doc. 16, pp. 6-7). Claimant asserts that, under this Circuit's precedent, a lapse in time was irrelevant if the doctor in question was formulating a treatment plan between visits, citing Ghokassian v. Shalala, 41 F.3d 1300, 1303 (9th Cir. 1994). (Doc. 16, p. 7).

The regulations provide, in pertinent part, that a

> [t]reating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source.

20 C.F.R. § 416.902. In Ghokassian, the United States Court of Appeals for the Ninth Circuit held that the Commissioner erred in finding that claimant's doctor was not his treating physician where claimant (1) had not seen any other doctor; (2) had seen the doctor twice in a fourteen-month period before the hearing before the ALJ; (3) had listed the doctor as his treating physician; and (4) had requested that this doctor treat him. 41 F.3d at 1303. Notably, in Ghokassian, as in other cases, the courts only considered medical sources who treated the claimant for the alleged disabling impairment as treating physicians. See id. at 1302-1303; Sprague v. Bowen, 812 F.2d 1226, 1231-1232 (9th Cir. 1987) (holding that physician who treated claimant for her depression was a treating source for that ailment although he was not a psychiatrist).

Here, Dr. Jackson was affiliated with the Covenant Medical Group ("CMG"), a group comprised of several physicians who worked out of two separate offices. (AR 144, 159-169, 189, 203-206). The medical records reveal that Claimant first saw Dr. Jackson on September 10, 2003 for his asthma and bronchitis. (AR 144). Claimant was treated by Dr. Jackson on November 14, 2003,

for asthma and dermatitis. (AR 166). Between then and September 29, 2004, Claimant went to CMG's other office for a well-child check-up (AR 159) and, on three other occasions, for his asthma and/or dermatitis, purulent rhinitis), and problems with his ears. (AR 161-163). During Claimant's August 31, 2004, appointment, an unidentified CMG doctor included as one of the listed complaints "acting up." (AR 162). No information as to what was meant by "acting up," or whether it was pathological or a reaction to starting school or feeling unwell, was mentioned. (AR 162). Claimant returned to Dr. Jackson's office on October 1, 2004, which is when Dr. Jackson added "hyperactive" and "learning disorder" to the regular diagnosis of asthma. (AR 167). Also on October 1, Dr. Jackson completed a Child Functional Assessment, in which he stated that Claimant had marked limitations in the domains of acquiring and using information and attending and completing tasks.[7] (AR 164). Dr. Jackson saw Claimant again on October 27, 2004, for a viral infection and dermatitis, and added "prob. ADHD" to his diagnoses. Dr. Jackson referred Claimant to Child Guidance. (AR 169). From November 2004 through June 2005, Dr. Jackson treated Claimant for asthma, pneumonia, back-pain, and dermatitis, and reportedly performed a well-child check-up. (AR 185-191). Only the record dated February 28, 2005, which contained a diagnosis of ADHD, made any reference to Claimant's alleged hyperactivity, and no treatment was prescribed. (AR 189).

Based on the records, it appears that Dr. Jackson could be considered Claimant's treating physician, especially from October 1, 2004, through June 2005, for purposes of his asthma and/or bronchitis, and his periodic infections. Ghokassian, 41 F.3d at 1302-1303. Dr. Jackson, however, never attempted to treat Claimant's ADHD, other than referring him to Child Guidance, and he did not follow-up on this referral. (AR 169, 185-191). Moreover, before October 1, 2004, Dr. Jackson only treated Claimant twice, in September and November 2003, while other CMG doctors treated him four times between November 2003 and October 2004. (AR 144, 159-63, 165-66).

///

---

[7] The exhibit list identifies the assessment as a medical report from Dr. Lewis, another CMG physician. (AR 3). The signature on the document appears to be the same as on Dr. Jackson's medical reports. (See AR 144, 166, 167, 189). Moreover, it is evident that, if Dr. Jackson did not personally complete the assessment, he told Dr. Lewis what boxes to check off, as evidenced by the notation at the bottom of the form directing an undisclosed person to call Dr. Jackson for more information. (AR 164).

Although Dr. Jackson seemingly became Claimant's primary physician shortly before the hearing, he did not treat Claimant's ADHD and had not treated him for asthma for eleven months, having treated him twice in 2003. Thus, the ALJ did not err in finding that Dr. Jackson was not, at the time, his treating physician, especially given that Claimant primarily had seen different doctors at CMG's other office during the relevant time. See Ghokassian, 41 F.3d at 1303 (emphasizing the fact that the claimant had been treated by no other doctor); Sprague, 812 F.2d at 1231-32 (noting that doctor treated claimant for psychiatric problem based upon which she sought disability (widow's) benefits).

**(ii) Discounting treating physician's opinions**

Finally, Claimant avers that the ALJ did not provide specific and legitimate reasons for rejecting the opinions of his treating physician, Dr. Jackson, as to Claimant's functional limitations. (Doc. 16, p. 8). The undersigned disagrees.

The courts distinguish among the opinions of three types of physicians: treating physicians, physicians who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). As a general rule, a treating physician's opinion is given special weight because of his or her familiarity with a claimant's physical condition. Id.; Smolen v. Chater, 80 F. 3d 1273, 1285 (9th Cir. 1996). Although entitled to great weight, a treating physician's opinion may be rejected by the ALJ under appropriate circumstances. Where a treating physician's opinion is not contradicted by another physician, it may be rejected by the ALJ only for "clear and convincing" reasons supported by substantial evidence in the record. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (quoting Lester, 81 F.3d at 830). Where a treating physician's opinion is contradicted by another physician, the ALJ may reject the treating physician's opinion only by providing "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). The same test applies to examining physicians: the ALJ must give clear and convincing reasons for rejecting uncontradicted opinions, or "specific and legitimate reasons supported by substantial evidence in the record" for rejecting those opinions that have been contradicted. Lester, 81 F.3d at 830-31.

Courts within the Ninth Circuit have recognized various reasons deemed sufficient for the ALJ to disregard a treating or examining physician's opinion.  These reasons include: conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for physicians' reports that are based substantially on the claimant's subjective complaints of pain.  <u>Flaten v. Secretary of Health & Human Svcs.</u>, 44 F.3d at 1453, 1463-1464; <u>Fair</u>, 885 F.2d at 604.  The ALJ may also disregard a physician's opinion which is "brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion." <u>Magallanes v. Bowen</u>, 881 F. 2d 747, 751 (9th Cir. 1989) (quoting <u>Young v. Heckler</u>, 803 F.2d 963, 968 (9th Cir. 1986).

Assuming, <u>arguendo</u>, that Dr. Jackson was Claimant's treating physician, the ALJ had multiple reasons to discount his opinion that Claimant had marked limitations because of his ADHD.  First, Dr. Jackson's diagnoses of ADHD are "brief and conclusionary in form with little in the way of clinical findings to support" them.  <u>Magallanes v. Bowen</u>, 881 F. 2d at 751 (citation omitted).  In fact, other than Dr. Jackson's brief observation of Claimant, and Ms. Thompson's complaints, there are no clinical findings to support the diagnoses.[8]  (<u>See</u> <u>infra</u>, section (A)(I)).  In addition, Dr. Jackson's opinions are set forth in a "check-off" assessment form, and contain no written reasons underlying why he considered Claimant limited in certain domains and unlimited in others. (AR 164).  A check-off report form is entitled to little weight.  <u>Crane v. Shalala</u>, 76 F.3d 251, 253 (9th Cir. 1996) (stating that the ALJ's rejection of a check-off report that did not contain an explanation of the bases for the conclusions made was permissible).  ALJ Birge provided sufficient reasons for rejecting Dr. Jackson's opinions, most notably that there were no medical records supporting a diagnosis that would suggest that Claimant's behavior was anything other than that of an active, normal child, no definitive diagnosis of ADHD had been made, and there was no indication, including in Ms. Thompson's testimony, that Claimant could not attend to and complete tasks.

---

[8]  It is not clear whether the August 31, 2004, complaint to a different CMG doctor that Claimant was "acting up" is the beginning of Claimant's alleged hyperactive behavior.  Even if it is, there were no notes or clinical tests performed to ascertain the nature of this behavior.  (AR 162).

**CONCLUSION**

For the reasons outlined above, the Court finds no error in the ALJ's analysis. As such, the Commissioner's decision to deny disability benefits is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court DENIES Claimant's appeal from the administrative decision of the Commissioner of Social Security.

The Clerk of this Court is DIRECTED to enter judgment as a matter of law in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Claimant Kylan Mangum.

IT IS SO ORDERED.

Dated: **March 21, 2007**              /s/ Theresa A. Goldner
**j6eb3d**                              UNITED STATES MAGISTRATE JUDGE